# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**RACHEL SUTHERLAND,**

      **Plaintiff,**

**vs.**                             **CASE NO. 3:20-CV-05626-MAF**

**ANDREW SAUL, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**

      **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER

Upon consent of the parties, this Social Security case was referred to the Undersigned by United States District Judge, M. Casey Rodgers. ECF Nos. 6, 7. It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and Supplemental Security Income pursuant to Title XVI of the Social Security Act. After careful consideration of the record, the decision of the Commissioner is REVERSED AND REMANDED.

## I.   Procedural History

On or about October 30, 2017, Plaintiff, Rachel Sutherland, filed an application for supplemental security income alleging disability beginning

August 24, 2017. Tr. 125, 144, 235-42. Plaintiff alleged she became disabled because of memory loss, depression and anxiety, seizures, a shunt placed in her brain, a hip deformity, and fibromyalgia. Id.; see also Tr. 41, 293, 298.

The agency initially denied Plaintiff's claim on December 21, 2017, and upon reconsideration on March 7, 2018. Tr. 162-65, 172-78.[1] Plaintiff requested an administrative hearing on March 16, 2018. Tr. 179. On June 13, 2019, Administrative Law Judge (ALJ), Tracy S. Guice, held the hearing via video. Tr. 33-66. Plaintiff was represented by counsel. Id. Plaintiff and Sheila G. Justice, an impartial vocational expert (VE), testified at the hearing. Tr. 37-60 (Plaintiff's testimony); Tr. 60-65 (Justice's testimony); Tr. 336-37 (Justice's resume). Also, during the hearing, the ALJ admitted medical records and other exhibits relating to Plaintiff's claims, specifically, "1-A through 4-A, 1-B through 9-B, 1-D through 10-D, 1-E through 20-E and 1-F through 14-F." Tr. 36.

On August 7, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. Tr. 12-31. The ALJ purportedly considered "all the evidence," including Plaintiff's medical records, and found that Plaintiff was not disabled. Tr. 16, 27. Plaintiff requested a Review of Hearing Decision on

---

[1] Citations to the transcript/administrative record, ECF No. 17, shall be by the symbol "Tr." followed by the page number that appears in the lower right corner.

August 27, 2019. Tr. 1-5, 232-34. On May 27, 2020, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff filed her Complaint with this Court on July 9, 2020. ECF No. 1. Defendant filed an Answer on March 9, 2021. ECF No. 16. The parties filed memoranda of law, which have been considered. ECF Nos. 21, 22.

## II.   Plaintiff's Claims

Plaintiff claims that the Commissioner's decision should be reversed because the ALJ failed to properly consider timely-submitted medical evidence, or alternatively, the case should be remanded for consideration of new and material evidence. ECF No. 21, p. 3, 6. In support, Plaintiff points to the ALJ's decision, which states: "The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date." Id., pp. 3-4 citing to Tr. 15. According to Plaintiff, the ALJ failed to specifically explain what evidence was not timely submitted and did not provide an explanation for the implicit refusal to consider the evidence. Id., p. 4.

Plaintiff maintains that, eight days before the administrative hearing, in counsel's letter dated June 5, 2019, she informed the ALJ of the outstanding medical evidence from Lakeview Center and Sacred Heart Hospital. Id., p. 5

(citing to Tr. 339). Plaintiff's counsel submitted medical records from Sacred Heart Hospital on June 24, 2019, which was eleven days after the hearing and more than six weeks before the ALJ issued her decision. Id., p. 6 (citing to Tr. 67-69, 99-123). The ALJ's decision gave no indication whether these medical records were reviewed or considered.

Plaintiff claims the evidence submitted on June 24, 2019, is new, non-cumulative, material; and there was good cause for the failure to submit the evidence at the administrative level. Id., p. 8. According to Plaintiff, the medical source statement by Dr. Cherian and Nurse Skinner (medical providers at Lakeview Center) contains medical opinions not otherwise in the record. Id., pp. 8-9 (citing Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988). The statement contains an opinion from Plaintiff's treating providers as it relates to Plaintiff's "mental faculties and capabilities," which is material. Id., p. 9. Finally, Plaintiff claims there is "good cause" because the evidence actually was submitted at the administrative level on June 24, 2019, although it was not reflected in the ALJ's decision, the "List of Exhibits," nor the Appeals Council correspondence. Id., p. 10.

Plaintiff claims that a remand is necessary because "there is no evidence that either the ALJ or the Appeals Council ever considered the timely-submitted evidence." Id., p. 11. According to Plaintiff, the Court should

reverse the finding that she is not disabled and award benefits or to remand the case for further proceedings. Plaintiff also seeks attorney's fees.

## III. Commissioner's Claims

The Commissioner argues that the ALJ properly excluded the evidence because Plaintiff did not inform the ALJ five business days before the hearing; rather, counsel's letter notification did not provide enough specific information to identify medical source statement by Dr. Cherian as outstanding evidence. ECF No. 22. The Commissioner further argues that there was no good cause for the late notification, the new evidence is not material, and the ALJ properly excluded the medical source statement. Id. Finally, the Commissioner argues that Plaintiff did not re-submit the new evidence to the Appeals Council; "instead, Plaintiff submitted a request for review of the Hearing Decision without this additional evidence, thereby depriving the Appeals Council of the ability to consider the medical evidence together with the ALJ's decision." Id., p. 11.

## IV. Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, 703 at 1239 (citations omitted); <u>accord</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).[2]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, <u>Bloodsworth</u>, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if she is under a disability prior to the expiration of her insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

disabled. If the claimant satisfies this burden of demonstrating she cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more

a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ must give a treating physician's opinion "substantial or considerable weight" absent "good cause." Id. (quotation marks omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "'[A] medical professional who has dealt with a claimant and his maladies over a

long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Id. (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

"The ALJ may discount the treating physician's opinion if good cause exists to do so." Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing

Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a

treating physician has merely made conclusory statements, the ALJ may

afford them such weight to the extent they are supported by clinical or

laboratory findings and are consistent with other evidence as to a claimant's

impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

However, if the decision of the ALJ is explained and relies on evidence in the

record it should be upheld. "We will not second guess the ALJ about the

weight the treating physician's opinion deserves so long as he articulates a

specific justification for it." Hunter v. Soc. Sec. Admin. Comm'r, 808 F.3d 818,

823 (11th Cir. 2015).

## V.     Legal Analysis

### A. Findings of the Administrative Law Judge (ALJ)

The Court begins its analysis by first outlining the ALJ's

determinations. The ALJ found that Plaintiff had not engaged in substantial

gainful activity since October 30, 2017, the application date. Tr. 17. The ALJ

found that Plaintiff had the "following severe impairments": "a pseudoseizure

disorder, headaches associated with ventricular shunt, hypertension,

obesity, a history of Legg-Perthes-Calve disease, fibromyalgia, depression,

anxiety, a borderline personality disorder, and substance abuse, not material."[4] Id., pp. 18-19. Plaintiff does not appear to contest these findings.

The ALJ also found that Plaintiff's "lumbago, cervicalgia, osteoarthrosis, joint pain in the pelvis and hip, radiculitis, spasm, and chronic pain syndrome" were "nonsevere." Id., p. 19. Plaintiff does not appear to contest this determination.

The ALJ made several other findings. Plaintiff has not engaged in substantial gainful activity since October 30, 2017, her application date. Tr. 17. Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 18. Specifically, the ALJ "[could] find no evidence that the combined clinical findings from such impairments reaches the level of severity contemplated in the listings." Tr. 18. In addition, the ALJ explained that to "satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating,

---

[4] In the memorandum, the Commissioner neglected to include the ALJ also found Plaintiff's depression as a severe impairment. ECF No. 22, p. 4.

persisting, or maintaining pace; or adapting or managing themselves."
Tr. 18-19.

The ALJ found Plaintiff had no more than moderate limitations in her abilities to learn, recall, and use information. Tr. 19. Similarly, Plaintiff has "a moderate limitation" in interacting with others; concentrating, persisting, or maintaining pace; adapting or managing herself; and her ability to regulate her emotions, control her behavior and maintain well-being in a work setting." Id. Accordingly, the ALJ found:

> Because [Plaintiff's] mental impairments do not cause at least two "marked" limitations or one "extreme" limitation the "paragraph B" criteria are not satisfied. The [ALJ] has also considered whether the "paragraph C" criteria are satisfied . . . the evidence fails to establish the presence of the "paragraph C" criteria.

It appears that Plaintiff is contesting this finding. The ALJ explained that Paragraph B criteria limitations are not an assessment of residual functional capacity "but are used to rate the severity of mental impairments at steps two and three." Tr. 19. At steps four and five, a more detailed assessment is required. Id. The ALJ also determined Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)" with certain exceptions. Tr. 19-20.

The ALJ found that Plaintiff had no past relevant work experience; however, there are other jobs existing in the national economy that Plaintiff

could perform. Tr. 25. This determination was due following the consideration of the VE's testimony given Plaintiff's "age, education, work experience, and residual functional capacity." Id. In particular, the VE testified that considering all factors, Plaintiff is able to perform the following light representative occupations: mail clerk, non-postal; office helper; and folder. Tr. 26. Also, Plaintiff can perform certain sedentary jobs, including, addressing clerk; assembler, small products; and circuit board assembler. Id.

Finally, the ALJ determined the Plaintiff "has not been under a disability, as defined in the Social Security Act, since October 30, 2017, the date the application was filed." Id.

B. The ALJ's Failure to Consider Timely-Submitted Evidence and New Evidence.

As narrated above, Plaintiff argues that more recent medical records constitute new, material evidence that would properly support a finding of disabled. Specifically, Plaintiff points to records she submitted June 24, 2019, from Sacred Heart Hospital and Lakeview Center (Dr. Cherian's statement). ECF No. 21. Alternatively, Plaintiff argues that the ALJ did not consider the timely-submitted evidence.

Generally, a "claimant is allowed to present new evidence at each stage of this administrative process. See 20 C.F.R. § 404.900(b). The Appeals Council must consider new, material, and chronologically relevant

evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.' Id. § 404.970(b)." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). When the Appeals Council refuses to consider new evidence, courts review its decision *de novo*. Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1321 (11th Cir. 2015).

A claimant must establish that: (1) there is new, noncumulative evidence, (2) the evidence is material, and (3) there is good cause for the failure to submit that evidence at the administrative level. Hunter, 808 F.3d at 821. Evidence is material if it is relevant and probative such that there is a reasonable possibility that it would change the administrative result. See Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1321 (11th Cir. 2015).

To be materially relevant, the "new" medical reports would have to rebut the ALJ's finding. Quite simply, if the ALJ had this new evidence, there is a reasonable possibility that the decision would have been different. See 42 U.S.C. § 405(g); see also Hunter, 808 F.3d at 821.

Pursuant to 20 C.F.R. § 416.1435(a), a claimant "must inform us about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." Plaintiff concedes that "only if that

requirement is not met may the ALJ decline to consider the evidence in question." ECF No. 21, p. 5. Plaintiff specifically alleges that the new evidence was not considered because the ALJ errantly found it was not timely submitted; and the ALJ failed to explain which evidence was not timely submitted. ECF No. 21, pp. 8-11. Plaintiff claims that the ALJ's decision "makes no reference to any of the medical evidence submitted after Plaintiff's hearing." Id., p. 5. Finally, Plaintiff maintains that there was good cause for the failure to submit the evidence under a *de minimis* procedural default, citing Milano v. Bowne, 809 F.2d 763, 767 (11th Cir. 1987). Id., p. 10.

The Appeals Council denied review in this case, stating that it received the additional evidence but that Plaintiff "must also show there is a reasonable probability that the additional evidence would change the outcome of the decision" and good cause for not submitting it earlier. Tr. 2.

When a claimant presents new evidence to the Appeals Council and review is denied, the Court will consider the claimant's evidence anew to determine whether the new evidence renders the denial of benefits erroneous. Ingram v. Comm'r of SSA, 496 F.3d 1253, 1262 (11th Cir. 2007). "Section 405(g) permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated "sentence four remands" and "sentence six remands," each of which

remedies a separate problem." Id. at 1261. "The fourth sentence of section 405(g) provides the federal court 'power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Id. To obtain a "sentence four" remand, the claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. Id. at 1266-67.

*1. The Timeline of Submission of New Evidence*

It is critical to understand the timeline in this case. On June 5, 2019, eight days prior to the hearing, Plaintiff's counsel submitted a letter notifying the ALJ of outstanding evidence comprised of medical records from:

1. Sacred Heart Hospital dated from **January 1, 2019, through June 5, 2019**; and

2. Lakeview Center dated from **March 4, 2019, through June 5, 2019**.

Tr. 339. The letter also noted that Plaintiff had requested records from Lakeview on May 13, 2019. Id. Counsel's letter was among the exhibits admitted by the ALJ during the hearing as Exhibit No. 20E and was considered. See Tr. 29, 36, 339.

On June 7, 2019, six days prior to the hearing, Plaintiff's counsel submitted a letter to the ALJ *purporting* the attached records from Lakeview Center were from October 26, 2017, (not March 4, 2019, as previously noticed) through June 5, 2019. Tr. 795. However, the records were from April 4, 2018, (outside the scope of the initial letter) through May 31, 2019. 796-842. Nonetheless, these records were admitted as exhibits during the hearing as Exhibit No. 14F and were considered and cited to within the ALJ's decision. Tr. 31, 36. Notably, these records confirm that Dr. Cherian was one of Plaintiff's treating physicians at Lakeview Center during that period. See Tr. 800-803, 806-809, 811-813.

On June 24, 2019, eleven days after the administrative hearing, Plaintiff submitted a letter purporting to include certain records from Sacred Heart Hospital. Tr. 99.

2. *The Records from Sacred Heart, submitted on June 24, 2019, may not be considered "new evidence" and were properly excluded.*

The Court begins with the record from Sacred Heart Hospital dated November 7, 2018, which was attached to the June 24th letter, and whether this record is considered "new, material" evidence. Tr.100-122. A *de novo* review of the record reveals a routine, follow-up visit to assess Plaintiff's recovery following the implementation of the ventricular shunt for her pseudotumor cerebri. Plaintiff reported her eye issues were better, but she

had a "dull and throbbing" headache "exacerbated by [lights] and sounds."

Tr. 104. Matthew Pearson, M.D., found Plaintiff:

> bright awake and alert . . . visibly obese . . . Her visual fields are full to confrontation . . . She moves her arms and legs with good strength and coordination . . . Her gait is stable . . . Her surgical wounds are well-healed . . . She shows little radiographic change with her shunt, but the ventricles are smaller than before placement. We discussed that the source of pseudotumor cerebri is due to obesity and that her best long-term health and relief from symptoms will be with weight loss . . . **She has no limitations from a neurosurgical standpoint**. (emphasis added).

Tr. 104-107, 109-10, 112-115, 117. Within this record, some of Plaintiff's health history is documented as follows:

| Problems | Status | Onset Date |
|---|---|---|
| Anxiety | Active | 11/18/2016 |
| Depressive Disorder | Active | 11/18/2016 |
| Benign Intracranial Hypertension | Active | 2/22/2017 |
| Headache | Active | 11/8/2017 |

On its face, this record is apparently cumulative and not new and material. Based on other treatment records from Sacred Heart and other providers, the ALJ determined that Plaintiff had severe impairments which included the headaches associated with the ventricular shunt, hypertension, obesity, depression and anxiety, among other severe impairments, all based on the treatment records and the opinions of the medical consultants, and Plaintiff's own testimony of these impairments. Tr. 17-18, 20; See also Tr.

799-841. Dr. Pearson's evaluation aligns with the assessments and observations made by Dr. Cherian and Nurse Skinner elsewhere in the record as relating to Plaintiff's mood, orientation, affect, thought processes, insight, judgment, competency, finding Plaintiff's "memory appeared grossly intact." Tr. 801, 806-807, 811-13. In particular, Dr. Pearson's finding that Plaintiff has "no limitations from a neurosurgical standpoint," supports a finding that there is no reasonable possibility that this record would change the ALJ's findings.

Finally, Plaintiff failed to timely submit this evidence at the administrative level. On June 24, 2019, eleven days *after* the hearing, Plaintiff's counsel submitted a letter to the ALJ along with record from Sacred Heart Hospital. Tr. 99-123. Counsel's letter *purported* that the attached records spanned the period from February 20, 2018 (not January 1, 2019, as he indicated in his initial letter), through June 5, 2019. Tr. 99. Yet, the records consisted of the follow-up visit and evaluation conducted prior to the purported period (on November 7, 2018) and the "patient care summary" listing the treatment up through Plaintiff's last visit, which was November 7th[5]. Tr. 100-22. This record is outside the scope Plaintiff's counsel outlined

---

[5] The referral order treatment date is November 7, 2018. There are other date stamps from November 16, 2018, (Tr. 105, 118); January 11, 2019, (Tr. 100); and February 5, 2019, (Tr. 102, 122). However, these dates indicate when the information was faxed or

in his letter to the ALJ dated June 5, 2019. Tr. 339. Because Plaintiff's counsel failed to notice the ALJ of these records five days before the administrative hearing, the ALJ was not required to consider it.

Because the record is cumulative, not material, and was not timely submitted, the Court need not discuss the matter of whether good cause exist for the delayed submission of this particular record from Sacred Heart Hospital.

3. *The "medical source statement," Tr. 67-69, completed by Dr. Cherian and Nurse Skinner is new evidence and was timely submitted.*

In her brief, Plaintiff argues that the "medical source statement" completed on June 3, 2019, by Dr. Cherian and Nurse Skinner (Lakeview Center) is new, material evidence from the treating medical providers[6], which should have been considered by the ALJ. ECF No. 21, p. 8. The undersigned agrees.

The medical source statement, signed by Dr. Cherian and Nurse Skinner just ten days before the administrative hearing, indicated **five** areas where the degree of Plaintiff's impairment was noted as "MARKED":

---

when the record was otherwise electronically signed and updated. All of the treatment notes from November 7, 2018, are duplicated. There is one exception, a notation that on April 22, 2019, there is a change in one of Plaintiff's medications, "diclofenac sodium 50 mg tablet, delayed release." Tr. 121.

[6] Dr. Cherian and Nurse Skinner were treating medical providers as evidenced by Exhibits 7F and 14F, which were admitted into evidence and considered by the ALJ.

1. Plaintiff's "ability to interact appropriately with the general public;"

2. Plaintiff's "ability to get along with co-workers or peers;"

3. Plaintiff's "ability to maintain attention and concentration for extended periods;"

4. Plaintiff's "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;" and

5. Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."

Tr. 67-68. This record is apparently non-cumulative because this opinion is not set forth elsewhere in the medical record. More importantly, this assessment was completed by treating providers who could attest to Plaintiff's limitations over a longitudinal period. See Tr. 645-61. The record is also chronologically relevant and probative such that there is a reasonable probability it would change the administrative outcome. This is particularly so where the ALJ determined that because Plaintiff's "mental impairments [did] not cause at least two "marked limitations or one 'extreme' limitation, the 'paragraph B" criteria are not satisfied." Tr. 19. In short, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that would result in a finding of disabled at step two or three. Where a treating

physician identifies that five "marked limitations" exist, there is a reasonable probability of a different outcome.

The medical source statement was apparently sent to the agency along with the Sacred Heart Hospital records on June 24, 2019, albeit eleven days after the administrative hearing. ECF No. 21-1. However, this record was within the dates of service listed for Lakeview Center as identified in the letter to the ALJ dated June 5, 2019. In other words, the ALJ was reasonably noticed that the medical source statement was within the set of records requested by counsel. The Court finds that a "sentence four" remand is warranted in this case, particularly, because Plaintiff has demonstrated that, in light of the new evidence, which was timely submitted, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole as outlined below.

   4. *Substantial Evidence Does Not Support the ALJ's Decision.*

Plaintiff argues that the ALJ, essentially, ignored the timely-submitted evidence. ECF No. 21, p. 6. Aside from failing to consider the medical source statement, the decision indicates that the ALJ did not fully consider other timely-submitted evidence relating to Plaintiff's mental impairments. Although the ALJ provides citations to other Lakeview Center records (Exhibits 7F, 13F, 14F), the ALJ summarized that:

records show a history of major depressive disorder and a generalized anxiety disorder with brief inpatient hospitalizations in 2015 and 2017 in the setting of crack cocaine abuse. The claimant's mental impairments were otherwise treated conservatively with medications . . . prescribed through the Lakeview Center and Escambia County Department of Corrections prior to the application date. During an October 2017 medication management session, the claimant reported problems with short-term memory loss, daily sadness, fatigue poor concentration, feeling overwhelmed, worry, and a loss of interest in activities she previously enjoyed. She also presented with an anxious mood an[d] tearful affect with poor insight and judgment. Nevertheless, mental status examination otherwise revealed a cooperative demeanor with an alert and oriented sensorium, logical thought processes, and grossly intact memory . . . The claimant continued routine, conservative treatment for her major depressive disorder, borderline personality disorder, and provisional generalized anxiety disorder through Lakeview Center throughout the remainder of the record. By February 2018, she reported that her medication was somewhat effective in treating her symptoms; and although she reported some problems with hallucinations at a subsequent visit, examination was otherwise negative for delusions, paranoia, loose associations, tangentiality, or circumstantiality. The claimant also continued to present with mood fluctuations on mental status examination; nevertheless, she otherwise generally presented as cooperative and engaged with full orientation, organized thoughts and intact memory. . . Tr. 22-23.

Review of the records from Lakeview Center reveals that the ALJ completely ignored the providers' notations which might contradict the ALJ's decision. In the same February record referenced by the ALJ, Plaintiff claimed that although medications were "somewhat effective" for her

depression and anxiety, she continued to have difficulty with insomnia (averaging just three hours of sleep per night), "mood instability, anger outbursts, poor appetite, panic attacks, [and] feeling overwhelmed." Tr. 788. It is also significant that the ALJ ignored the Lakeview Center records from the previous year and the subsequent visits.

On February 1, 2017, Plaintiff reported "feeling more anxious and has been having trouble sleeping . . . often stays awake most of the night and sleeps during the day." Tr. 656. She reported the medication was *not helpful*. Id. On March 27, 2017, Plaintiff reported "feeling more anxious in the afternoon after her son gets home from school" and continued to have "trouble sleeping at times." Tr. 659. On May 18, 2017, Plaintiff reported "some difficulty with sleep and is extremely tired the next day." Tr. 662. On May 31, 2017, Plaintiff reported "having difficulty sleeping and concentrating" and was "easily irritated" even though medication was "some help." Tr. 640. The suicide/homicide risk assessment conducted the same day indicated Plaintiff's key symptoms were "impulsivity" and "anxiety/panic," but she remained a low risk. Tr. 666-67. On June 8, 2017, Plaintiff reported "sleep disturbance, excessive worry/fears, depressed mood, fatigue," feeling worthless, "irritability," and had "anxiety with crowds." Tr. 634. The treating

physician found Plaintiff met the criteria for major depressive disorder because she personally was experiencing:

> symptoms o[f] a 2 week period or longer with clinically significant impairment in functioning in occupational, social and other important areas. The client reports . . . Depressed mood most of the day nearly every day, diminished interest or pleasure in activities, significant weight loss or gain or change in appetite, insomnia/hypersomnia, psychomotor agitation or retardation, feelings of worthlessness or excessive/inappropriate guilt, fatigue, impairment in concentration, and impairment in functioning.

Tr. 634, 636. On June 13, 2017, Plaintiff reported "difficulty coping with depression and anxiety symptoms and [was] agreeable to engage in Adult OP Depression group"; she was scheduled to begin group treatment on June 30 in conjunction with other psychiatric services. Tr. 670. She attended some individual and group therapy; then, on July 23, 2017, Plaintiff was assessed as a moderate (not low) risk for suicide. Tr. 680-83. Plaintiff was experiencing suicide ideation "hourly" with "moderate" intensity. Tr. 681. In October 2017, Plaintiff reported that she ran out of medication and, that "Remeron and BuSpar were "ineffective in treating her symptoms," she had "difficulty sleeping averaging 4-5 hours a night, short-term memory loss, sadness daily, loss of interest in things she used to enjoy, fatigue, poor concentration, feeling overwhelmed, worrying." Tr. 688. She consented to increases in medications. Id. Throughout her treatment with Lakeview

Center, Plaintiff's medications were discontinued, changed, and dosages were adjusted. Tr. 634-91.

The record also indicates that in 2018, Lakeview Center included a diagnosis of "unspecified bipolar and related disorder," and "Bipolar I disorder," which the ALJ fails to mention in her decision. Tr. 801, 804, 807, 812, 840-41. On August 14, 2018, Plaintiff reported that her medications were "somewhat effective in treating her symptoms of bipolar disorder" but the "anger outbursts, difficulty sleeping averaging 3-4 hours a night, auditory hallucinations" continued. Tr. 806. The following year, in 2019, Plaintiff continued to report similar symptoms including "occasional panic attacks, anger outbursts, mood swings," and "forgetting stuff." Tr. 811.

It is worth noting that Plaintiff testified at the administrative hearing that she was treated at Lakeview Center for bipolar disorder and anxiety and regularly takes medication to manage both conditions. Tr. 48-49. She testified that she regularly presents to Lakeview Center for medication management and to see the psychologist. Tr. 49-50. Plaintiff admitted that she was unable to attend individual and group therapy regularly because she did not have a ride and could not make the appointed times. Tr. 50. Plaintiff also testified that has auditory hallucinations sometimes and visual hallucinations. Tr. 52. Yet, in the decision, the ALJ fails to reference any of

the above notations in the records. Viewed as a whole, the records from Lakeview Center and Plaintiff's testimony suggest that, for a number of years, Plaintiff has been suffering with a combination of bipolar disorder, depression, anxiety, and borderline personality disorder that significantly impairs her mental and social functioning and has been working with her medical providers to find the correct blend of medications.

Without explanation, the ALJ stated in her decision: "'we will not defer or give any specific evidentiary weight, including controlling weight to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources." Tr. 23. Rather, the ALJ found the opinions of the reviewing medical consultants, Dr. Mihms and Dr. Ragsdale, "somewhat persuasive." Tr. 23-24. The ALJ gave no reason for completely discounting the opinions of the treating physicians. This is somewhat concerning because Dr. Mihms could not have (and did not) review any of medical records after October 2017 (Tr. 125-142); and Dr. Ragsdale reviewed no medical records after February 2018 (Tr. 144-161). In other words, none of the Lakeview Center records submitted as Exhibit No. 14F were reviewed by an agency medical consultant; they were overlooked without explanation.

Given the duration and frequency of Plaintiff's treatment at Lakeview Center, the ALJ's reasons for giving no weight to the opinions of the treating

physician must be supported by substantial evidence and must be clearly articulated. <u>Marbury</u>, 957 F.2d at 841; <u>Phillips</u>, 357 F.3d 1241. The Court finds the ALJ has failed to clearly articulate such reasoning. Instead, the ALJ only listed some of Plaintiff's more minor symptoms and completely failed to engage with the portions of the Lakeview Center records that diagnose Plaintiff with bipolar disorder and explain her more severe symptoms. This verges on a blatant mischaracterization of Plaintiff's mental impairments. At best, it demonstrates a fundamental -- and common -- lack of understanding of the incapacitating effects of mental illness. As recently articulated by the Eleventh Circuit:

> Many mental disorders—and bipolar disorder in particular—are characterized by the unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months. <u>See</u> <u>Scott v. Astrue</u>, 647 F.3d 734, 740 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."). Indeed, in another case also involving a claimant diagnosed with bipolar disorder, we explicitly "agree[d] with our sister [c]ircuits that people with chronic diseases can experience good and bad days." <u>Schink v. Comm'r of Soc. Sec</u>., 935 F.3d 1245, 1267 (11th Cir. 2019).

<u>Simon v. Comm'r, SSA</u>, 2021 U.S. App. LEXIS 17098, *25-26, 2021 WL 2345638 (11th Cir. June 9, 2021). This is particularly so given the medical

source statement by the treating medical providers, Dr. Cherian and Nurse Skinner, which shows Plaintiff has "marked" limitations in **five** functional areas, as previously described. Tr. 67-69.

The Court finds that the ALJ does not provide good cause to discount Lakeview Center's opinions. Here, the ALJ must also discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects. See Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position"). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor, 786 F.2d at 1053. Therefore, the case must be remanded for the ALJ to set out her specific findings and reasons for accepting or rejecting evidence at step three. Of course, if a positive finding at step three is determined by the ALJ, this would result in the approval of the application for benefits.

This Court is mindful of the substantial and unique burden placed upon ALJs in Social Security Act cases. The Court does not require a written evaluation of every piece of testimony and evidence submitted. However, a

minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision is not supported by substantial evidence and is REVERSED AND REMANDED. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439. The Commissioner is directed to REMAND this case to the Administrative Law Judge for further proceedings consistent with this Order. To the extent Plaintiff's brief includes a motion for the Court to award reasonable attorney's fees, the motion is DENIED without prejudice.

The Clerk of Court is DIRECTED to enter a JUDGMENT for Plaintiff, pursuant to sentence four of 42 U.S.C. § 405(g), REVERSING the Commissioner's decision and REMANDING this case for further administrative proceedings. The Clerk is directed to close the file.

IN CHAMBERS at Tallahassee, Florida, on July 2, 2021.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**